IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN KING AND
TYRECE EDWARDS,

        Plaintiffs,

v.

THE RIB CRIB BBQ, INC.,

        Defendant.

Case No. 16-4142-DDC-KGS

## MEMORANDUM AND ORDER

This Order decides two pending motions in this closed case: (1) plaintiffs' Motion for Order (Doc. 75), and (2) defendant's Motion for Sanctions (Doc. 78). On July 24 and 26, 2018, pro se plaintiffs submitted two separate letters to the court. Docs. 74, 75. Although the court was not able to understand precisely what plaintiffs' letters sought, it appeared that plaintiffs were asking the court to set aside the parties' Stipulation of Dismissal (Doc. 73), because, plaintiffs contend, they never consented to it. *See, e.g.*, Doc. 75 at 1 ("We ask the court to intervene on this matter due to the misrepresentation that[ ] has occurred, and our forged signature placed onto documents without our consent or knowledge."). The court thus directed the Clerk to docket one of the letters as a motion. Doc. 75. Defendant filed a Response to plaintiffs' Motion (Doc. 77), refuting plaintiffs' allegations of misrepresentation and forgery. Also, defendant filed a Motion for Sanctions (Doc. 78). It seeks sanctions against plaintiffs under Federal Rule Civil Procedure 11 for submitting letters to the court that lack any factual basis.

On September 27, 2018, the court held a hearing on the two pending motions. Plaintiffs appeared pro se at the hearing. Defendant appeared through counsel. Also, a corporate representative for defendant attended the hearing with defendant's counsel. After the hearing, defendant filed under seal two confidential Settlement and Release Agreements (Docs. 86, 87). Each plaintiff had signed those agreements. Defendant also attached the endorsed settlement checks that defendant had issued to each plaintiff. In response, plaintiffs filed a document under seal purporting to contain copies of the settlement checks that plaintiff Jonathan King contends he received (Doc. 89). Because plaintiffs' submission differed from the settlement checks submitted in defendant's filing, the court ordered the parties to appear for a second hearing to explain the discrepancy. The court also ordered plaintiffs' former counsel, Larry Michel, to appear at the hearing to help the court understand the apparent discrepancy.

On October 22, 2018, the court held the second hearing. Plaintiffs again appeared pro se at the hearing. Defendant appeared through counsel. A corporate representative for defendant again attended the hearing with defendant's counsel. And Mr. Michel—plaintiffs' former counsel—attended the hearing as the court had asked.

After considering the parties' arguments (presented both by their papers and during the September 27 and October 22 hearings) and after reviewing the parties' submissions, the court denies plaintiffs' Motion for Order (Doc. 75). Also, the court denies defendant's Motion for Sanctions (Doc. 78). Although the court is frustrated by plaintiffs' representations to the court and their inability to provide all of the information necessary to understand their assertions, the court does not find that sanctions are warranted on this record. The court explains why, below.

## I. Factual Background

On August 26, 2016, plaintiffs Jonathan King and Tyrece Edwards, acting through counsel Larry Michel, filed this lawsuit against their former employer, defendant The Rib Crib BBQ, Inc. Plaintiffs asserted race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Mr. Michel represented both Mr. King and Mr. Edwards through the discovery phase of the case. Four days after the court entered the Pretrial Order—on September 19, 2017—Mr. Michel moved to withdraw as counsel for Mr. Edwards only. Doc. 56. The court granted that motion. Doc. 62. Afterward, Mr. Edwards proceeded in the lawsuit pro se. But Mr. Michel continued to represent Mr. King.

On December 1, 2017, Magistrate Judge K. Gary Sebelius held a settlement conference with the parties. Mr. Michel represented Mr. King at the mediation. Mr. Edwards appeared pro se. The parties announced they had settled their dispute at the mediation. Afterward, Judge Sebelius entered an Order reciting that the parties had reached a settlement. Doc. 70. Also, he ordered the parties to submit a Stipulation of Dismissal by December 29, 2017. *Id.*

On December 14, 2017, counsel for defendant filed a "Notice of Stipulated Voluntary Dismissal with Prejudice." Doc. 73. It recited that the parties were dismissing the lawsuit with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The Notice contained the electronic signatures of three individuals: (1) Mr. Michel, as Mr. King's counsel, signing on behalf of Mr. King; (2) Mr. Edwards appearing pro se; and (3) defendant's counsel signing on behalf of defendant.

For the next six months, the case saw no activity. But in July 2018, plaintiffs submitted their letters to the court. In general, they allege that the Stipulation of Dismissal is a

misrepresentation and contains a forgery. Plaintiffs, appearing pro se,[1] repeated these same allegations at the September 27 hearing. The court explores the plaintiffs' allegations in more detail, next.

## II. Discussion

### A. Plaintiffs' Allegations

Plaintiffs have made allegations—both in their papers and at the hearing—that are difficult to follow. But, as best the court can discern, both plaintiffs assert that defendant has not performed its obligations under the parties' settlement agreements. Specifically, Mr. King contends that defendants have not complied with his settlement agreement because: (1) he only received a portion of the total settlement amount to which the parties agreed; (2) he did not receive a 1099 form until July 2018; and (3) he did not receive a promised neutral letter of reference until July 2018. At the September 27 hearing, Mr. Edwards asserted that he "wasn't really sure" what he is seeking with his present allegations. But later, he asked the court to award him $15,000 for attorney's fees that defendant had paid to his former counsel as part of the settlement. Mr. Edwards asserts that his former counsel is not entitled to those fees. Also, both plaintiffs contend that they never agreed to the Stipulation of Dismissal (Doc. 73) that defendant filed with the court on December 14, 2017. As explained below, none of plaintiffs' assertions has any merit.

The facts adduced at the hearings establish that both Mr. King and Mr. Edwards entered settlement agreements with defendant. Defendant's counsel explained at the September 27 hearing that the parties reached an agreement at the December 1 mediation. Judge Sebelius's Order confirms as much. Doc. 70. Defendant's counsel also represented that the parties

---

[1] At the September 27 hearing, the court confirmed with Mr. King that Mr. Michel no longer represents him in this matter.

4

discussed the terms of their settlements in detail, and later tried to put the settlements' terms on the record with Judge Sebelius.[2] After the mediation, the parties reduced their agreements to writing. Defendant's counsel represented that he sent the proposed settlement agreements by email both to Mr. King's counsel and Mr. Edwards personally. Mr. Michel confirmed that he received the proposed settlement agreement for Mr. King, and he also represented that he provided it to Mr. King for review.

On December 5, 2017, Mr. Michel sent defendant's counsel a fully executed copy of Mr. King's settlement agreement. Doc. 77-1. In his correspondence attaching the fully executed agreement, Mr. Michel asked whether defendant intended to prepare a Stipulation of Dismissal. *Id.* at 1. Defendant's counsel responded the same day by sending a proposed Stipulation. *Id.* He asked Mr. Michel if he had permission to file the Stipulation once Mr. King had received his settlement payment. *Id.* Mr. Michel responded that he approved the Stipulation and that defendant's counsel could file it once payment was made. Doc. 77-2 at 1.

On December 7, 2017, Mr. Edwards sent an email to defendant's counsel acknowledging he had received his proposed settlement agreement and that he was in the process of reviewing it. Doc. 77-3. That same day, defendant's counsel sent Mr. Edwards a proposed Stipulation of Dismissal. *Id.* Defendant's counsel asked Mr. Edwards if he had Mr. Edwards's approval to file it once the parties had executed their settlement agreements and defendant had made the settlement payments. *Id.* On December 12, 2017, defendant's counsel sent another email to Mr. Edwards asking if he had an opportunity yet to review his settlement agreement. Doc. 77-4. Mr. Edwards responded that he was ready to sign once defendant had the settlement checks for him.

---

[2]  The court understands that the parties made a record of the terms of their settlements with Judge Sebelius using an audio recording. The court has attempted to locate that audio recording, but learned that the conference never was recorded due to a technical malfunction.

5

Doc. 77-5 at 1.  Defendant's counsel responded that he had the settlement checks ready to issue and offered to meet Mr. Edwards to execute the agreement and deliver the checks.  Doc. 77-6 at 1.  Mr. Edwards responded: "[I]f u got the check lets roll."  Doc. 77-7.  Defendant's counsel and Mr. Edwards then made arrangements for Mr. Edwards to come to the office of defendant's counsel's to sign the agreement.  On December 12, 2017, Mr. Edwards went to defendant's counsel's office, signed his settlement agreement, and received the settlement checks, a neutral letter of reference, and W-2 and 1099 tax forms.

On December 14, 2017, defendant's counsel filed the Stipulation of Dismissal that Mr. Michel (as Mr. King's counsel) and Mr. Edwards had approved.  Doc. 73.  Mr. Michel and Mr. Edwards (as a registered pro se litigant) received notice of the Stipulation of Dismissal's filing by email.  Doc. 77-9 at 1.  No one objected to the Notice of Dismissal's filing until plaintiffs submitted their pro se letters to the court many months later in July 2018.

Defendant has filed under seal its two confidential Settlement and Release Agreements with plaintiffs.  Docs. 86, 87.  One agreement memorializes Mr. King's settlement agreement with defendant.  Doc. 86.  The other agreement memorializes Mr. Edwards's settlement agreement with defendant.  Doc. 87.  Both agreements contain signature pages.  Mr. King's agreement contains his signature on the signature page.  Doc. 86 at 6.  And Mr. Edwards's agreement contains his signature on the signature page.  Doc. 87 at 6.

At the September 27 hearing, Mr. Edwards conceded to the court that he had signed his agreement.  Mr. King asserted at the hearing that he signed an agreement for attorneys' liens, but that he never had seen the other pages of the parties' settlement agreement.  The signature page of Mr. King's agreement contains an Acknowledgment of Signature and Satisfaction of

Attorneys' Liens. Doc. 86 at 6. Also, it contains the following language—in bold print and all capital letters—directly above Mr. King's signature:

> **HAVING READ AND UNDERSTOOD THIS AGREEMENT, HAVING HAD THE OPPORTUNITY TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT, AND HAVING HAD SUFFICIENT TIME TO CONSIDER WHETHER TO ENTER INTO THIS AGREEMENT, THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT AS OF THE DAY AND YEAR FIRST WRITTEN BELOW.**

*Id.* At the October 22 hearing, Mr. Michel denied Mr. King's assertion that Mr. Michel had failed to provide him with a full copy of the settlement agreement. To the contrary, Mr. Michel explained how and when he provided the settlement agreement to Mr. King. This dispute is one between Mr. King and his former counsel. It's not a matter for this court to resolve.[3] Also, Mr. King signed the agreement on the page numbered as page 6. Above his signature, the agreement stated—explicitly—that he had read and understood the agreement, had the opportunity to consult counsel about the agreement, and had sufficient time to consider the agreement before signing.

As the settlement agreements provide, both plaintiffs agreed to release defendant from their claims in exchange for settlement payments. After they executed their respective settlement agreements, both Mr. King and Mr. Edwards received the settlement payments that their agreements obligated defendant to pay. Shortly thereafter, Mr. King and Mr. Edwards either cashed or deposited the settlement payments that defendant had made to them.

The parties' settlement agreements specifically explain how the parties agreed to apportion the lump sum settlement payment made to each plaintiff. Doc. 86 at 1; Doc. 87 at 1.

---

[3] Mr. King provided documents to the court during the September 27 hearing that suggest plaintiffs filed an attorney discipline complaint against their former counsel. Mr. Michel confirmed at the October 22 hearing that plaintiffs have asserted an ethical complaint against him. Mr. Michel denies that he breached any of his ethical obligations when representing plaintiffs.

Mr. Edwards agreed that defendant would make two separate payments totaling the negotiated lump sum settlement. Doc. 87 at 1. The first amount was payable to Mr. Edwards for recovery of his alleged lost earnings less mandatory withholdings. *Id.* The second amount was payable to Mr. Edwards for his alleged non-economic damages. *Id.* Mr. Edwards concedes that defendant paid him both the first and second payments, totaling the agreed lump sum settlement payment.

As for Mr. King's settlement agreement, he agreed that defendant would make three separate payments totaling the negotiated lump sum settlement. Doc. 86 at 1. The first amount was payable to Mr. King for his alleged lost earnings less mandatory withholdings. *Id.* Mr. King concedes that defendant paid him this first payment. The second amount was payable to Mr. King for his alleged non-economic damages. *Id.* The third amount was payable to the law firm of Mr. King's counsel for attorney's fees and expenses earned or incurred in its representation of Mr. King and Mr. Edwards.[4] *Id.*

Mr. King's signature appears on the endorsement line of the second check payable for his alleged non-economic damages. *Id.* at 14. But Mr. King insisted at the hearing that he never received the full amount of that check. Instead, he provided the court with a copy of a check from Mr. Michel's law firm. This check's payee is Mr. King, but in an amount less than the amount defendant had agreed to pay Mr. King for alleged non-economic damages. Doc. 89 at 2–3. The only reason that Mr. King provided for this discrepancy is that he never was paid the amount he was owed under the parties' settlement agreement.

---

[4] At the September 27 hearing, Mr. Edwards asserted that he didn't understand why his counsel was entitled to fees because he was proceeding pro se when the parties reached their settlement agreement. But none of Mr. Michel's fees came out of Mr. Edwards's settlement payments. Only Mr. King's agreement includes an attorney fee provision. Also, in response to the court's questions, Mr. Edwards conceded that counsel had represented him in the case for more than a year before withdrawing. Also, he conceded that his lawyer had performed work for Mr. Edwards during that representation and that his counsel may have been entitled to payment for that representation.

Mr. Michel was able to shed light on the purported discrepancy at the October 22 hearing. He explained that Mr. King had taken several loans in advance of receiving his settlement payment from defendant—a significant fact that Mr. King had neglected to provide to the court. After the hearing, Mr. Michel filed documents with the court establishing that three different lending institutions had loaned money to Mr. King in exchange for his agreement to assign his interest in the settlement payments to each specific lending institution. Doc. 93-3. Also, in these agreements with the lenders, Mr. King had directed his lawyer to pay any settlement amounts that his lawyer received to the lending institutions to repay Mr. King's debts. *Id.* at 4–6. The three lending institutions are: (1) The Bank of Tescott; (2) Prime Case Funding; and (3) Case Advances. After Mr. Michel's firm received Mr. King's settlement payment from defendant, the law firm (through its trust account) issued checks to the three lending institutions for the amounts that Mr. King owed them. Mr. Michel has submitted the checks showing how the firm distributed defendant's settlement payment for Mr. King's alleged non-economic damages. Doc. 93-1. Mr. Michel submitted four checks: Three checks made payable to each of the three lending institutions for the amounts Mr. King owed them, and the fourth check made payable to Mr. King for the remaining amount.[5] *Id.*

When faced with Mr. Michel's explanation, Mr. King never denied that he had taken these loans against his settlement payment. Also, he never denied that he had directed Mr. Michel's firm to pay the amounts he owed to the three lending institutions, using the settlement funds paid by defendant for that purpose. Instead, Mr. King tried to argue that the terms of the loans he decided to take were unfair to him. This dispute is yet another dispute that is not a

---

[5] The court has added the amounts of the four checks together. They equal exactly the amount of the second settlement check that defendant paid Mr. King, *i.e.*, the amount for Mr. King's alleged non-economic damages.

matter for this court to resolve. The court notes, however, that Mr. King conceded he received the proceeds of the loans.

The facts thus establish that defendant paid plaintiffs the payments that the settlement agreements required defendant to pay to them. Mr. King's argument that he has not received all amounts owed to him is baseless. He received all payments he was owed under the agreement he signed. Also, Mr. Edwards is not entitled to recoup any of the attorney's fees paid to his former counsel. Mr. Edwards received all the settlement payments owed to him under his agreement with defendant.

The facts also establish that defendant's counsel provided to Mr. King's counsel the neutral letter of reference[6] he had bargained for in the settlement, and the W-2 and 1099 tax forms. Mr. King asserts that he never received these documents until defendant provided them to him in July 2018. Mr. Michel disputed that his firm had neglected to give Mr. King all of his settlement documents. Nevertheless, to the extent Mr. King is complaining that his counsel never provided him with these documents, that is a dispute between Mr. King and his counsel. The court has no jurisdiction to hear or decide that dispute. And it declines to get involved in it.

Finally, the persuasive facts establish that plaintiffs authorized defendant's counsel to file the Stipulation of Dismissal. Contrary to plaintiffs' assertion, this filing was not a misrepresentation or any fraud on the court. Instead, the facts establish that Mr. King's counsel and Mr. Edwards received a copy of the proposed Stipulation of Dismissal from defendant's counsel. Mr. Michel—as Mr. King's counsel and thus his authorized representative—informed

---

[6] Mr. King complained at the September 27 hearing about the contents of his neutral reference letter. He seemed to argue that it should contain more information about his employment than what the letter provides. The court rejects this argument. Both plaintiffs' letters contain the information that the settlement agreements required defendant to include in the letters. *See* Doc. 86 at 4, 7; Doc. 87 at 4, 7.

defendant's counsel specifically that he approved the Stipulation and that defendant's counsel could file it once the parties executed the settlement agreement and Mr. King had received payment. Mr. Edwards also received the proposed Stipulation of Dismissal from defendant's counsel. When he responded to defendant's counsel that he was ready to "roll" with signing the settlement agreement, defendant's counsel understood his response to approve the proposed Stipulation of Dismissal that he had sent earlier to Mr. Edwards. Defendant's counsel's understanding was perfectly reasonable, especially when Mr. Edwards had signed a settlement agreement expressing his agreement to release defendant from the claims he had asserted in this lawsuit (Doc. 86 at 2), he had received his settlement checks, and he had cashed or deposited those checks a few days later. And importantly, Mr. Edwards received an email notice of the filing of the Stipulation of Dismissal on December 14, 2017. He never made any complaints about the Stipulation's filing until months later. Plaintiffs' assertions about the Stipulation of Dismissal are wholly unpersuasive. Simply, they have no merit.[7]

For all these reasons, the court denies plaintiffs' Motion for Order (Doc. 75). None of the allegations that plaintiffs assert in their Motion for Order have merit. And thus the court refuses to set aside the Stipulation of Dismissal. It also declines to award plaintiffs any of the relief that they seek in their letters or that they requested at the in-person hearings.[8]

---

[7] Plaintiffs appear to argue that the language of the Stipulation of Dismissal contradicts the language of their settlement agreements because the Stipulation asserts that all parties will bear their own costs and attorney's fees, while the settlement agreements require defendant to pay plaintiffs' costs and attorney's fees. As defendant's counsel explained at the hearing, the language in the Stipulation simply advises the court that it need not apportion fees and costs to any parties. And plaintiffs never assert that they were required to pay their own fees and costs in violation of the parties' settlement agreements. To the contrary, the facts establish that defendant paid plaintiffs' attorney's fees and costs consistent with their memorialized settlement agreements.

[8] The court appreciates Mr. Michel's appearance to help the court understand the facts surrounding plaintiffs' assertions. Although no longer involved in this case as counsel, Mr. Michel complied with the court's directive to travel from Salina to Topeka to appear in-person at the October 22 hearing. At the hearing, Mr. Michel provided a helpful explanation of the facts. And after the hearing, Mr. Michel

11

### B. Sanctions

Defendant has filed a Motion for Sanctions (Doc. 78). It asks the court to award sanctions against plaintiffs under Federal Rule of Civil Procedure 11 for asserting baseless allegations of misrepresentation and fraud against defendant's counsel. Defendant asks the court, at minimum, to award defendant the costs and attorney's fees it incurred defending plaintiffs' meritless allegations, and to enjoin plaintiffs from asserting any other frivolous attacks against the dismissal of this lawsuit.

Rule 11 allows the court to impose sanctions when a party makes certain representations to the court that violate the Rule. Specifically, Fed. R. Civ. P. 11(b) provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 requires that a party accused of violating the Rule must receive notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(c)(1). A party can file a motion seeking sanctions under Rule 11(c)(2). Also, the court can impose sanctions on its own initiative after

---

submitted relevant documents for the court's review. The court is grateful for the time and effort Mr. Michel devoted to this enterprise, especially because he faced unfounded allegations of fraud.

ordering the party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

If the court determines that a party has violated Rule 11(b), it may impose an appropriate sanction on the party who violated the Rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1). A district court has "'broad discretion to impose Rule 11 sanctions.'" *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990)). But even so, the court must limit the sanction to one that is sufficient to deter the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4).

Also, the court recognizes that both plaintiffs currently proceed pro se in this lawsuit. And, while plaintiffs' pro se status requires the court to construe their pleadings liberally, pro se plaintiffs still must comply with the Federal Rules. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (explaining that a litigant's "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure" (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994))).

Here, the court provided plaintiffs notice of their perceived Rule 11 violation with its Show Cause Order. Doc. 81 at 2 ("The court thus orders plaintiffs to show good cause at the September 2[7]th hearing why the court should not deny their Motion for Order and grant defendant's Motion for Sanctions [under Rule 11]."). And the court gave plaintiffs an opportunity to respond at both the September 27 and October 22 hearings. At those hearings, plaintiffs submitted a confused version of the facts. The court is frustrated that plaintiffs— especially Mr. King—were not more forthcoming about all the facts pertinent to their purported dispute over the settlement agreements. But the court is hesitant to award sanctions on the current record. The record is muddled by plaintiffs' confusion over the facts and their

13

misunderstanding of the process for completing a settlement and dismissing a lawsuit. Their misunderstanding is not sanctionable. The process of weaving together a settlement agreement, dismissal papers, and payments—much less multiple payments—is not self-explanatory. Asking questions is a perfectly reasonable, careful, and thoughtful response to the confusion. But that isn't what plaintiffs did. Instead, they started making allegations of fraud and casting aspersions. Those allegations, as the court now understands, were baseless and, arguably, worthy of sanction.

But after careful deliberation, the court has decided to give plaintiffs the benefit of the doubt. It will not award sanctions against them for their assertions—even though they never established that defendant had engaged in any misconduct or fraud, as they contended. The court thus will deny defendant's Motion for Sanctions. **But it warns plaintiffs: If they make any other similar filings that contain unfounded allegations, the court will not view it in such a forgiving way.**

### III.     Conclusion

For reasons explained, the court denies plaintiffs' Motion for Order (Doc. 75) and defendant's Motion for Sanctions (Doc. 78). Plaintiffs' assertions that defendant did not comply with its obligations under the parties' settlement agreements and that defendant fraudulently filed the Stipulation of Dismissal are utterly baseless. Nevertheless, the court declines to award sanctions against plaintiffs on the current record.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Order (Doc. 75) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Sanctions (Doc. 78) is denied.

**IT IS SO ORDERED.**

**Dated this 20th day of November, 2018, at Kansas City, Kansas.**

<span style="margin-left:50%">s/ Daniel D. Crabtree<br>
**Daniel D. Crabtree**<br>
**United States District Judge**</span>